| | | |
|---|---|---|
| JOHNATHAN WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:10-CV-823 |
| | § | |
| CITY OF PORT ARTHUR, TEXAS, CHIEF | § | |
| MARK BLANTON, OFFICER CALVIN | § | |
| WALKER, LIEUTENANT MARTIN | § | |
| BLITCH, MAJOR DENNIS ODOM, and | § | |
| SERGEANT KEN CARONA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants City of Port Arthur, Texas (the "City"); Chief Mark Blanton ("Chief Blanton"); Officer Calvin Walker ("Walker"); Lieutenant Martin Blitch ("Blitch"); Major Dennis Odom ("Odom"); and Sergeant Ken Carona's ("Carona") (collectively, "Defendants") Amended Motion for Summary Judgment (#24). Defendants seek summary judgment as to Plaintiff Johnathan Williams's ("Williams") claims brought pursuant to 42 U.S.C. §§ 2000e-2000h-6 ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and state law. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the summary judgment motion should be granted.

I.       <u>Background</u>[1]

On December 29, 2010, Williams, an African American who is a former police officer with the Port Arthur, Texas, Police Department (the "Department"), filed the instant lawsuit against Defendants after his employment was terminated through an indefinite suspension order issued on October 28, 2009.  He asserts claims for race discrimination and retaliation as well as state law causes of action for assault and battery; intentional infliction of emotional distress; libel; slander; negligent supervision, training, and retention; tortious interference with a prospective business relationship; and violation of the Texas Whistleblower's Act ("TWA").  Defendants filed a motion to dismiss Williams's original complaint on February 1, 2011.  After obtaining leave of court, Williams amended his complaint on April 25, 2011, asserting many of the same causes of action.[2]

In his Amended Complaint, Williams appears to seek recovery under the following legal theories:  employment discrimination (disparate treatment based on race) and retaliation in violation of Title VII; civil rights violations under 42 U.S.C. §§ 1981 and 1983; procedural due process; assault and battery; intentional infliction of emotional distress; slander; tortious interference with a business relationship; and violation of the TWA.  He bases his claims on several incidents (detailed below) that allegedly occurred during his tenure as a Port Arthur police officer.

---

[1] Williams did not file a response to this motion.  Accordingly, the court accepts as undisputed the facts set forth by Defendants.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988); *Lynch v. Jet Ctr. of Dallas, LLC*, No. 3:05-CV-2229-L, 2007 WL 211101, at *3 (N.D. Tex. Jan. 26, 2007); *Perry Williams, Inc. v. FDIC*, 47 F. Supp. 2d 804, 809 (N.D. Tex. 1999); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996); Local Rule CV-56(c).

[2] Defendants' Motion to Dismiss the Original Complaint was denied as moot on April 26, 2011.

A.     <u>The Profanity Incident</u>

First, in July 2008, Williams was reportedly suspended for five days after using profanity toward a citizen who physically assaulted him. A witness described Williams, who was off-duty at the time, as the initial aggressor. In his affidavit dated January 27, 2012, Chief Blanton stated that, during the investigation of this matter, it was revealed that Williams "struck the individual on the face and pull[ed] [out] his gun." At a Disciplinary Review Board ("DRB") hearing held August 3, 2009, Williams admitted fault for this incident and appeared to concede that the discipline was warranted, stating "[y]eah I messed up the first time, I did; I took that, I didn't lie to you. I came in here and told the truth just like I'm telling the truth in this DRB."

Nonetheless, Williams complains that, with regard to the Profanity Incident, he was treated differently than Joe Paul ("Paul"), a white Port Arthur police officer, who was not disciplined for his involvement in a "large biker gang fight." Williams claims that he informed Chief Blanton of Paul's actions but was told that: (1) only the incident involving Williams was being investigated by the Department because Williams's altercation was caught on video whereas Paul's was not; and (2) Williams "need not worry about other officers and how the Department investigates there [sic] misconduct." Contrary to these assertions, however, Chief Blanton testified that the Paul incident was investigated by the department, although no disciplinary action was taken. During that investigation, officers reviewed the video, which was inconclusive as to any wrongdoing on the part of Paul, a witness stated that Paul did not assault anyone, and the alleged victim refused to cooperate with the investigating officers.

B.    The Beard Incident

In September 2008, Williams allegedly visited his family doctor regarding facial bumps caused by shaving.  He was reportedly told to keep his beard neatly trimmed at a "length no longer than 3/4 inch"[3] and was given a doctor's note excusing him from following the Department's policy requiring officers to be clean-shaven.  According to Williams, his immediate supervisor, Blitch, required him to get a second opinion.   After receiving the same recommendation, Blitch and Odom allegedly directed Williams to get a third opinion, warning him that if he failed to do so, he would face disciplinary action for disobeying a direct order.  Williams contends that several unidentified white police officers were permitted to have beards and goatees without obtaining two doctor's excuses to prove they were unable to follow departmental policy.  Defendants, however, insist that Williams was never disciplined for violating any such policy.

C.    The Insurance Fraud Incident

Williams next avers that, in December 2008, after he accidentally slammed his thumb in the door of his patrol car, Blitch and Odom had Williams investigated for insurance fraud.  Several officers reportedly were asked to give written statements concerning this matter.  Williams does not allege any facts about the written statements or the results of the fraud investigation. Chief Blanton testified that Tommy Gibson, a black officer, made the fraud allegations against Williams and that, in any event, "Williams was not disciplined, in any way, relating to the incident where he injured his thumb on the door of his patrol car, or for any alleged insurance fraud."  Consistent

---

[3] Presumably, Williams means that he was advised by his physician to keep his beard no *shorter* than 3/4 inch.

with Chief Blanton's recollection, Williams later admitted the fraud investigation "didn't go anywhere."

Williams also asserts that, at an unspecified time, an unidentified white officer intentionally "shot up" his squad car and another unidentified white officer was banned from a fitness gym for spying on female patrons.[4]  Neither officer was disciplined or went before a DRB, according to Williams.  In response to these averments, Chief Blanton stated in his affidavit:

> I am unaware of any complaints regarding a white officer who shot up a police car, or a white officer that was kicked out of a gym for spying on female patrons and a related trespass warrant.  I am aware of an incident in 1978 where a civilian shot and his bullet grazed my patrol car, which was investigated, and I was cleared of any wrongdoing.  I am also aware of a civilian employee who was spying on females, and he was either fired, or give[n], and took, the opportunity to resign.

### D.    The Game Warden Incident

In January 2009, Williams was allegedly sent before a DRB for failing to place an arresting officer's name (the game warden) in a police report.  According to Williams, it was not his duty to record the name of the arresting officer; rather, he claims it was an unidentified detective's responsibility.   The detective, however, was reportedly not required to appear before a disciplinary review panel.  In response, Chief Blanton testified that, although the Game Warden Incident was investigated, a "charge of neglect of duty [against Williams] was not sustained," and he was never disciplined for failing to place the game warden's name in a police report.

### E.    The Memorial High School Incident

On June 1, 2009, Officer Walker filed a departmental complaint against Williams for his actions during an off-duty job at Memorial High School in Port Arthur that day.  According to

---

[4] Williams apparently makes these allegations in an effort to show that he was treated differently than similarly situated white employees.

Walker, after he and Williams broke up a fight between two sixteen-year-old students, the officers disagreed over the proper police protocol. At some point, Williams cursed and shoved Walker. Nonetheless, Williams maintains that Walker grabbed and shoved him as well as cursed several times at Williams by calling him a "young punk."

During the Department's investigation of this incident, several reports and statements were collected and interviews were conducted, revealing, among other things, that Memorial High School administrators were disturbed by Williams's behavior that day. After reviewing the investigator's report, on July 28, 2009, a disciplinary review panel unanimously recommended Williams's termination, noting in its memorandum: "in Officer Williams['s] statement he said that if Anger Management was suggested he would not attend because he stated he did not need it. To maintain his employment with this Police Department would be negligent supervision." The next day, Williams filed his own complaint against Walker arising out of the same incident at Memorial High School.

F.    The August 3, 2009, DRB Hearing

A DRB hearing concerning the Memorial High School Incident was held on August 3, 2009. During his interview, Williams acknowledged that Walker placed his hand on Williams's shoulder on two separate occasions in an attempt to talk about how to handle the situation. He also admitted "to refusing to talk to Walker about [their disagreement], [and] cursing at and pushing Officer Walker, knocking him into a cart and into a wall." According to Chief Blanton, "Williams's version of events, . . . submitted in two separate statements written over [six] months apart, was . . . contradictory, [and] could not be satisfactorily explained in the August 3rd DRB interview." Curiously, Williams stated during this same hearing that he killed seven people in a

three-day span while serving in the military in Afghanistan. Williams later admitted to Chief Blanton that he lied about having served in Afghanistan and about having taken any lives.

Regarding this hearing, Williams alleges that he did not receive adequate notice of "the allegations" and complains that the board was not impartial because: (1) it was composed entirely of white employees in violation of the Department's policy requiring at least one minority board member; and (2) Odom and Blitch were permitted to participate as board members and recommend Williams's termination despite a complaint of discrimination allegedly filed against them with the Equal Employment Opportunity Commission ("EEOC") in February 2009, approximately six months previously. According to the hearing transcript, the DRB was composed of the following members: Sergeant Chris Boneau (white), Major Odom (white), Lieutenant Blitch (white), Detective Brian Cater (white), and Officer Heather Primm (white female). Williams appeared at the hearing with his attorney, Mitch Adams.

G.    Williams's EEOC Complaints

Williams maintains that he filed a complaint with the EEOC on February 20, 2009, against Defendants Blitch and Odom. Despite these allegations, however, there are only two EEOC charges before the court: one filed on October 6, 2009, and an amended complaint filed on November 18, 2009. Both were filed against the City of Port Arthur Police Department and cite race discrimination and retaliation. Defendants maintain they have no record of an EEOC charge filed in February 2009.

H.    Williams's Accusations Against Walker

Williams next avers that, shortly after the Memorial High School Incident, in June 2009, he informed Defendants Blitch and Odom of reports from citizens accusing Walker (a black male)

of having inappropriate relationships with underage girls. Chief Blanton reportedly accused Williams of fabricating the complaints; however, Williams insists that he reported Walker's suspected inappropriate and illegal behavior in good faith.

Defendants have countered with evidence that Debbie Beavers of the Jefferson County District Attorney's Office investigated the charges against Walker by interviewing all of the alleged female victims, none of whom corroborated Williams's story. The Department conducted a separate investigation, requesting reports from twelve officers supposedly possessing personal knowledge of Walker's alleged misconduct. This investigation similarly did not support Williams's accusations. In fact, Williams eventually admitted to Chief Blanton that he falsely accused Walker of illegal conduct with minors in retaliation for Walker's prior departmental complaint stemming from the Memorial High School Incident. Because Williams fabricated the complaints, Sergeant Boneau (who was a member of the DRB for the Memorial High School Incident) filed a charge against Williams on August 27, 2009, for vexatious/unnecessary complaints. The DRB later unanimously sustained this charge against Williams, with four of the five board members recommending termination and one recommending a 120-day suspension.

I.     The Traffic Incident

On August 6, 2009, Texas Department of Public Safety Trooper David Martinez ("Trooper Martinez") initiated a complaint against Williams for an incident that occurred the prior day. Williams, while off-duty and in the company of convicted felons, was issued a citation for speeding and two warnings for "failure to yield ROW to emergency vehicle-evading and unapproved/illegal equipment (blue lights)." According to Trooper Martinez, Williams initially evaded him, but he eventually returned. After reviewing memoranda and statements given by

Martinez and Williams, Chief Blanton placed Williams on administrative leave on August 6, 2009, pending further investigation. On August 18, 2009, a disciplinary review panel unanimously sustained the charge of nonconformance with laws and recommended a written reprimand against Williams. In light of Williams's checkered employment history, however, including the prior sustained charge of vexatious/unnecessary complaints (against Walker), Chief Blanton determined that indefinite suspension/termination of Williams's employment was appropriate, as reflected in a departmental memorandum dated September 11, 2009.

J.    Order of Indefinite Suspension

After concluding that indefinite suspension/termination was warranted, Chief Blanton claims he met with and afforded Williams the opportunity to discuss the charges and proposed punishment, even offering Williams the option of resigning. The indefinite suspension order was issued on October 28, 2009, though Williams appealed the decision to arbitration pursuant to a labor agreement between the City and the Port Arthur Police Association. The arbitrator upheld the indefinite suspension on April 12, 2010.

Williams complains that Chief Blanton's indefinite suspension order contained four unspecified accusations of which Williams "had no prior knowledge." Williams contends that he did not receive notice of these charges before "the DRB hearing"[5] and was never given an opportunity to respond or appear before the board. According to Williams, "white officers in the past always received notice of charges against them and were afforded the opportunity to respond to those charges." Williams does not identify the white officers or the specific charges to which he is referring.

---

[5] Presumably, Williams refers to the DRB hearing held on August 3, 2009.

K.  Williams's Claims

Based on the foregoing, it appears that Williams is asserting that Defendants Blanton, Blitch, Odom, and the City are liable for discriminating against him on the basis of his race (under a theory of disparate treatment) in violation of 42 U.S.C. §§ 1981, 1983, and 2000e.  Williams also alleges that (1) Blanton, Blitch, Odom, and the City retaliated against him for asserting "his 1st Amendment rights when he filed an EEOC complaint against Defendants" and (2) the City retaliated against him for "exercising his rights by opposing a discriminatory practice, making a charge and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful discriminatory practice."  Williams further contends that these same defendants violated his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.  In addition to his federal causes of action, Williams asserts numerous state law claims, including:  assault and battery; slander; tortious interference with a prospective business relationship against Walker; intentional infliction of emotional distress against Walker and Carona; and violation of the TWA against Blanton, Blitch, Odom, and the City.

On January 27, 2012, Defendants filed the instant motion, seeking summary judgment as to all of Williams's claims.  Defendants assert myriad grounds for dismissal.  Williams has neither responded to the pending motion nor proffered evidence in support of any of his claims.

II.  Analysis

A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The parties seeking

summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving parties, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008)

(citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

Here, Williams, the nonmoving party, has filed no response and has proffered no evidence in opposition to Defendants' motion. Summary judgment may not be awarded by default, however, merely because the nonmoving party has failed to respond. *See Ford-Evans v. Smith*, 206 F. App'x 332, 334 (5th Cir. 2006); *United States v. Wilson*, 113 F. App'x 17, 18 (5th Cir. 2004); *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *Settlement Capital Corp. v. Pagan*, 649 F. Supp. 2d 545, 552 (N.D. Tex. 2009). "'A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.'" *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat'l Bank*, 776 F.2d at 1279); *see Owens v. Town of Delhi*, 469 F. Supp. 2d 403, 405-06 (W.D. La. 2007); *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 947-49 (S.D. Tex. 2005).

Nonetheless, the court may grant summary judgment if the movants have made a *prima facie* showing that they are entitled to such relief. *See* Fed. R. Civ. P. 56(e); *see also Eversley*, 843 F.2d at 174; *Owens*, 469 F. Supp. 2d at 405. The nonmovant is "'under an obligation to respond . . . in a timely fashion and to place before the court all materials it wishes to have

considered when the court rules on the motion.'" *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1293 n.11 (5th Cir.) (quoting *Cowgill v. Raymark Indus., Inc.*, 780 F.2d 324, 329 (3d Cir. 1985), *cert. denied*, 513 U.S. 926 (1994)). The court may also accept as undisputed the facts set forth in support of the unopposed motion for summary judgment. *See Eversley*, 843 F.2d at 174; *Lynch*, 2007 WL 211101, at *3; *Perry Williams, Inc.*, 47 F. Supp. 2d at 809; *Rayha*, 940 F. Supp. at 1068; Local Rule CV-56(c).

B.    Race Discrimination

In the case at bar, Williams alleges that Defendants Blanton, Blitch, Odom, and the City discriminated against him on the basis of his race.[6] At the outset, however, the court notes that it is unclear whether Williams intends to prosecute his race discrimination claims solely under Title VII or whether he also asserts violations of §§ 1981 and 1983. For example, in his Amended Complaint, Paragraph 10, entitled "NATURE OF ACTION," Williams states:

> This is an action under Title 42 U.S.C. Section 1981, 1983, and 2000 to correct unlawful employment practices on the basis of race and color as well to prevent retaliation for the exercise of one's 1st amendment rights. (Title VII CLAIM).

---

[6] To the extent Williams asserts Title VII claims against the individual defendants, they are dismissed, as these individuals do not fit the statutory definition of employer set forth in 42 U.S.C. § 2000e(b). *See Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 205 (1997); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465 (5th Cir.), *cert. denied*, 534 U.S. 948 (2001); *see also Baldwin v. Layton*, 300 F. App'x 321, 322 (5th Cir. 2008) (stating that the Fifth Circuit has "repeatedly rejected any individual liability under Title VII") (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003)); *accord Upchurch v. City of Moss Point*, No. 1:10-CV-228, 2011 WL 5082224, at *3-4 (S.D. Miss. Oct. 26, 2011) (dismissing former police officer's Title VII claims against several municipal employees, including police chief, and reasoning that such individuals were not "employers" for purposes of the statute); *Preacely v. City of Houston*, No. H-10-0492, 2010 WL 1903754, at *1 (S.D. Tex. May 11, 2010) (dismissing individual city employees as defendants in Title VII case); *Pena v. City of Colony*, No. 4:08-CV-50, 2008 WL 4642256, at *1 (E.D. Tex. Oct. 8, 2008) (same); *Harris v. City of Carrollton*, No. 3:01-CV-1249, 2002 WL 1489533, at *1 (N.D. Tex. July 10, 2002) (same).

In any event, Defendants move for summary judgment as to all causes of action, asserting numerous grounds for relief.

It is well established that Title VII, § 1981, and § 1983 provide parallel causes of action for public employees alleging racial discrimination in employment and require essentially the same proof to establish liability. *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 490-91 (5th Cir. 2011) (citing *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F. 3d 157, 166 (5th Cir. 2007)); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). All three statutes require a showing of intentional discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (Title VII); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (§ 1981); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (Title VII & § 1981); *D.A. ex. rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 451 (5th Cir. 2010) (§ 1983); *Cox v. City of Dallas*, 430 F.3d 734, 749 (5th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006) (§§ 1981 & 1983); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (§ 1981, § 1983, & Title VII). In cases where a plaintiff invokes Title VII, § 1981, and § 1983 within the same lawsuit, "'specific consideration of these alternate remedies for employment discrimination . . . is necessary only if their violation can be made out on grounds different from those available under Title VII.'" *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1575 (5th Cir. 1989), *cert. denied*, 493 U.S. 1019 (1990) (quoting *Parker v. Miss. State Dep't of Pub. Welfare*, 811 F.2d 925, 927 n.3 (5th Cir. 1987).

Claims of employment discrimination brought under §§ 1981 and 1983 are generally governed by the same evidentiary framework applicable to claims brought under Title VII. *See, e.g., Hernandez*, 670 F.3d at 650 (Title VII & § 1981); *Jackson v. Watkins*, 619 F.3d 463, 466

(5th Cir. 2010) (Title VII & § 1981); *Davis*, 448 F. App'x at 490-91 (§ 1981 & § 1983); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004) (§ 1981 & Title VII); *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1996), *cert. denied*, 522 U.S. 1016 (1997) (§ 1981 & Title VII); *Wallace*, 80 F.3d at 1047 (§ 1981, § 1983, & Title VII).  Because the same evidentiary burdens apply, a claim that fails on the merits under Title VII, likewise, fails under §§ 1981 and 1983.

In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence.  *See Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 279 (5th Cir. 2011); *Jackson*, 619 F.3d at 466; *Lauderdale*, 512 F. 3d at 166; *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'"  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995))); *accord Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *Jones*, 427 F.3d at 992.  "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Reeves*, 530 U.S. at 142-43; *Fahim*, 551 F.3d at 349; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 345, 346 (5th Cir. 2007).

Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142-43; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)); *accord Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999). To establish a *prima facie* case of discrimination under Title VII, a plaintiff may show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was discharged or suffered some adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group. *See Fahim*, 551 F.3d at 350; *Alvarado*, 492 F.3d at 611; *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Turner*, 476 F.3d at 345; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.), *cert. denied*, 546 U.S. 1061 (2005). For a disparate treatment claim, a plaintiff must demonstrate that employees outside his protected class received preferential treatment in circumstances nearly identical to his. *See Turner*, 675 F.3d at 893; *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Keelan v. Majestic Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005); *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005)

(emphasizing that assessment of similarity of employees must be viewed from employer's perspective); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010); *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *Hicks*, 509 U.S. at 509); *accord Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Alvarado*, 492 F.3d at 611. "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507) (emphasis in original); *accord Vaughn*, 665 F.3d at 636; *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510); *Black*, 646 F.3d at 271; *Nasti*, 492 F.3d at 593; *Wheeler*, 415 F.3d at 405; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at

143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Nasti*, 492 F.3d at 593; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753-54 (5th Cir. 2005); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001).

In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" *Rachid*, 376 F.3d at 312 (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)); *accord Vaughn*, 665 F. 3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1124 (2008); *Keelan*, 407 F.3d at 341. If the plaintiff demonstrates that race was a "motivating factor" in the employment decision, the defendant must then prove "'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Keelan,* 407 F.3d at 341 (quoting *Rachid*, 376 F.3d at 312); *accord Black*, 646 F.3d at 269 n.6; *Machinchick*, 398 F.3d at 352. The plaintiff will prevail if the employer fails to carry this burden. *Keelan*, 407 F.3d at 341; *Machinchick*, 398 F.3d at 352; *Rachid*, 376 F.3d at 312.

Under the pretext alternative approach, the "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Reeves*, 530 U.S. at 143; *Wallace*, 271 F.3d at 220); *accord Nasti*, 492 F.3d at 593. "An explanation is false or unworthy of

credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578

(citing *Sandstad*, 309 F.3d at 899); *accord Vaughn*, 665 F.3d at 637; *Burrell*, 482 F.3d at 412.

"[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity

of the employer's explanation." *Reeves*, 530 U.S. at 147 (emphasis in original); *accord Carmona*

*v. Sw. Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010); *Bryant*, 413 F.3d at 476; *Kanida v. Gulf*

*Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004); *West*, 330 F.3d at 385; *Ratliff v. City*

*of Gainesville*, 256 F.3d 355, 360 (5th Cir. 2001). "Evidence demonstrating that the employer's

explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case,

is likely to support an inference of discrimination without further evidence of defendant's true

motive." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 897); *accord Black*, 646 F.3d at

276; *Machinchick*, 398 F.3d at 351 (citing *Reeves*, 530 U.S. at 147-48). "'[O]nce the employer's

justification has been eliminated, discrimination may well be the most likely alternative

explanation, especially since the employer is in the best position to put forth the actual reason for

its decision.'" *Russell*, 235 F.3d at 223 (quoting *Reeves*, 530 U.S. at 147); *accord Black*, 646

F.3d at 276; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. Hence, the plaintiff need not, as

a matter of course, introduce additional, independent evidence of discrimination to avoid summary

judgment. *See Reeves*, 530 U.S. at 148; *Ratliff*, 256 F.3d at 361-62; *Blow v. City of San Antonio*,

236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223.

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors,

including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the

employer's explanation is false, and any other evidence that supports the employer's case'" that

properly may be considered by the court when ruling on a motion for summary judgment. *Price*

*v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49); *accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory.'" *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 565 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001) (quoting *Vadie*, 218 F.3d at 372). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford*, 234 F.3d at 902 (citing *Wyvill*, 212 F.3d at 301). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford*, 234 F.3d at 903 (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id*.

In his Amended Complaint, Williams details several occurrences which form the bases of his race discrimination claims; however, none are viable. First, regarding the Profanity Incident in July 2008, Williams presents no evidence to rebut Chief Blanton's explanation that Williams was suspended for five days because he not only used profanity, but also was the initial aggressor and "struck the individual on the face and pull[ed] [out] his gun." This uncontested evidence demonstrates that race played no part in Williams's suspension. Notably, because Williams later admitted fault for this incident, stating "[y]eah I messed up the first time, I did," he appears to

concede that the City suspended him because he "messed up," not because of his race. Moreover, Williams's comparison of the Profanity Incident to Paul's "large biker gang fight" does not save his claim, as that situation—involving an inconclusive investigation and a witness stating that Paul was not at fault—is not factually similar to the circumstances presented here (*i.e.*, where Williams is characterized as the initial aggressor). *See Turner*, 675 F.3d at 893; *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 520 (5th Cir. 2010); *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 365-66 (5th Cir. 2009); *Fahim*, 551 F.3d at 350. Even assuming that Williams makes out a *prima facie* case for alleged discrimination, he has neither produced evidence suggesting that race was a motivating factor in the City's decision to suspend or discharge him nor evidence rebutting the City's proffered reasons therefor. As a result, Williams's claim of race discrimination based upon the July 2008 suspension is legally infirm under both the pretext and mixed-motive theories. *See Taylor*, 322 F. App'x at 368; *Coronado v. San Patricio Cnty.*, No. C-10-178, 2011 WL 923458, at *5 (S.D. Tex. Mar. 15, 2011).

Williams's next race discrimination claim, based on the Beard incident in September 2008, also fails for lack of evidence. Defendants contend that Williams was never disciplined for violating the Department's shaving policy, and Williams presents no evidence to substantiate his assertions. Consequently, he has failed to show that he suffered an adverse employment action. *See Sarwal v. Principi*, 226 F. App'x 334, 336 (5th Cir. 2007) (holding that letter counseling of a dress code that had no disciplinary effect was not an "adverse employment action" required to make out a *prima facie* case of discrimination); *see also Lewis v. United Parcel Serv., Inc.*, 252 F. App'x 806, 808 (9th Cir. 2007) (finding no adverse employment action where employee was

threatened with discipline for not following the employer's grooming policy, but never actually disciplined).

Similarly, regarding the Insurance Fraud Incident—in which Williams complains that he was wrongfully investigated for insurance fraud after he slammed his thumb in the door of his patrol car—Chief Blanton testified that Williams was investigated only after a black officer reported suspicions of insurance fraud, but that, in any event, Williams was never disciplined. Williams's later concession that the fraud investigation "didn't go anywhere" is consistent with Chief Blanton's account. It appears, therefore, that not only was the investigation without racial animus, but also that he was not treated less favorably than similarly situated employees outside his protected class and did not suffer an adverse employment action. *See Sarwal*, 226 F. App'x at 336; *Robison v. Tex. Dep't of Crim. Justice*, 94 F. App'x 225, 228 (5th Cir. 2004) (affirming district court's grant of summary judgment as to plaintiff's Title VII claim on the basis that plaintiff suffered no adverse employment action where he failed to submit evidence that he was "fired, reassigned, denied promotion, suffered a change in benefits, or disciplined"); *Davila v. FedEx Trade Sys., Inc.*, No. L-08-74, 2010 WL 346139, at *6 (S.D. Tex. Jan. 22, 2010) (stating that because plaintiff provided no evidence that he was disciplined for being tardy, he was unable to show that he was treated less favorably than similarly situated employees outside his protected group); *accord Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 306 (6th Cir. 2003) (reasoning that plaintiff was unable to show she suffered adverse employment action where she was not terminated, disciplined, or demoted).

Williams's complaint that he was sent before a disciplinary review panel for failing to place an arresting officer's name (the Game Warden) in a police report meets a similar fate. It is

undisputed that Williams was not disciplined for failing to place an arresting officer's name in a police report, and any "charge of neglect of duty" was not sustained by the Department. Therefore, Williams did not suffer an adverse employment action. *See Sarwal*, 226 F. App'x at 336; *Robison*, 94 F. App'x at 228; *Davila*, 2010 WL 346139, at *6; *accord Gettings*, 349 F.3d at 306.

Regarding Williams's indefinite suspension/discharge from the police force, even assuming he has made out a *prima facie* case of race discrimination,[7] he does not point to any evidence refuting the City's reasons for terminating his employment. *See Nasti*, 492 F.3d at 593; *Laxton*, 333 F.3d at 578. Williams also produces no evidence that his race was a motivating factor in the City's decision. *See Taylor*, 322 F. App'x at 368; *Coronado*, 2011 WL 923458, at *5. Rather, the uncontroverted evidence demonstrates that Williams was indefinitely suspended for numerous rule violations relating to nonconformance to laws, misconduct, unbecoming conduct, untruthfulness, vexatious/unnecessary complaints, and conduct prejudicial to good order within the police department. According to Chief Blanton, all of these charges stemmed from four primary situations: (1) the Memorial High School Incident; (2) Williams's admittedly false accusation that Walker had inappropriate relationships with underage girls; (3) the Traffic Incident with Trooper Martinez; and (4) Williams's fabrication in the DRB hearing about his military service (*i.e.*, killing seven men in a three-day period in Afghanistan). Because the record is devoid of evidence suggesting that the City's proffered reasons for terminating Williams's

_____

[7] Williams does not, in fact, make out a *prima facie* case of race discrimination, as he fails to show that he was replaced by someone outside his protected class or identify a similarly situated employee outside his protected group who was not terminated under nearly identical circumstances. *Turner*, 675 F.3d at 893; *Fahim*, 551 F.3d at 350.

employment were pretextual or that race was a motivating factor in the City's decision, summary judgment is warranted as to all of Williams's race discrimination claims.[8]  *See Davis*, 372 F. App'x at 520 (affirming summary judgment in favor of defendant where plaintiff presented no competent summary judgment evidence suggesting that her employer's reason for her discharge was a pretext or that a discriminatory motive played any role in the employer's decision); *McCoy*, 492 F.3d at 562 (affirming district court's grant of summary judgment where plaintiff adduced no evidence that her employer's reasons for placing her on administrative leave were pretextual); *Ochoa v. BP Am., Inc.*, No. H-09-1226, 2012 WL 1230186, at *13 (S.D. Tex. Mar. 29, 2011) (granting summary judgment where plaintiff proffered no evidence of discriminatory motive or pretext).

C.   Retaliation

Defendants also move for summary judgment as to Williams's retaliation claims, which appear to be founded solely on Title VII's statutory provisions.[9]  Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

---

[8] In light of this determination, the court need not discuss Defendants' alternative grounds for summary judgment with regard to his race discrimination claims.

[9] In the four retaliation sections of his Amended Complaint, Williams references § 1983, but only for various propositions relating to municipal liability and the immunity of police officers from civil liability under § 1983.  Further, in his response to Defendants' prior motion to dismiss, Williams attempted to clarify the legal theories upon which he relies:  "Plaintiff contends that his complaint does in fact allege sufficient facts to state a cause of action against Defendants, and does state several causes of action, namely, . . . Plaintiff['s] claims under Title VII for race discrimination and retaliation for filing an EEOC claim against the City of Port Arthur's Police Department as well as certain City employees individually."  For these reasons, it appears that Williams's retaliation claims are based entirely on Title VII.

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

As with discrimination claims, the "*McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases." *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *cert. denied*, 536 U.S. 922 (2002) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401-02 (5th Cir. 2000)); *accord Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007); *Turner*, 476 F.3d at 348; *Septimus v. Univ. of Houston*, 399 F.3d 601, 607-08 (5th Cir. 2005). Further, "[t]he framework for analyzing a retaliation claim is the same as that used in the employment discrimination context." *Rios*, 252 F.3d at 380; *accord Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *Hernandez*, 670 F.3d at 657; *Strong*, 482 F.3d at 805; *Baker*, 430 F.3d at 754-55; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). If the employer meets its burden, the employee may rebut a defendant's legitimate, nondiscriminatory reason for an adverse employment action by demonstrating that "'(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative).'" *Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 756 (N.D. Miss. 2011) (quoting *Davis*, 372 F. App'x at 519). Under a pretext theory, to carry his ultimate burden, the plaintiff must demonstrate that the adverse employment action would

27

not have occurred "but for" the employee's participation in the protected activity. *See Nunley v. City of Waco*, No. 11-50119, 2011 WL 3861678, at *5 (5th Cir. Sept. 1, 2011); *Hernandez*, 670 F.3d at 658; *Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608.

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in statutorily protected activity under Title VII; (2) action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *See McCoy*, 492 F.3d at 556-57, 559; *Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007); *Turner*, 476 F.3d at 348.

In his Amended Complaint, Williams alleges that the City "instituted a campaign of retaliation which included having co-workers document all actions by client that could be used against him for termination as well as forcing [Williams] to go before the Disciplinary Review Board regarding minor infraction" because he exercised his rights "by opposing a discriminatory practice, making a charge and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful discriminatory practice." Although it is unclear what incident Williams maintains prompted the City to engage in such activity, in same section of his Amended Complaint, Williams claims he was retaliated against because he "exercised his 1st amendment rights when he filed an EEOC complaint." A reading of Williams's complaint indicates that Defendants' purported retaliation is based upon the EEOC charge Williams states he filed in February 2009 against Blitch, Odom, and the City. As previously noted, however, despite Williams's assertion to the contrary, there is no evidence that any such charge exists. The only two EEOC charges before the court were filed on October 6, 2009, and November 18, 2009,

respectively.  Defendants counter that they have no record of an EEOC charge filed in February

2009.  Indeed, Chief Blanton testified as follows:

> Neither I, nor my office, has ever received Williams's alleged February 2009
> EEOC Charge of Discrimination, or any type of notice thereof, which is allegedly
> focused on Lt. Blitch and/or Major Odom.  I further had never heard of this alleged
> February 2009 EEOC charge prior to reviewing the Complaint in this lawsuit.  I
> have also spoken with Blitch and Odom, and they state they were not aware of, and
> have never seen, a February 2009 EEOC Charge alleged against them by Williams.

Moreover, Chief Blanton swore under oath that the decision to discharge Williams was

made prior to the October 6, 2009, EEOC charge.  Specifically, Chief Blanton explained that,

although the indefinite suspension order was issued on October 28, 2009, the decision to discharge

Williams was made more than a month earlier, as evidenced by a departmental memorandum

issued by the DRB on August 18, 2009.  In a space provided at the bottom of this document is

Chief Blanton's hand-written decision to terminate Williams's employment, followed by his

signature and the date, "9/11/09."  In fact, Chief Blanton stated that he only became aware of

Williams's October 6, 2009, EEOC charge on November 4, 2009, when he was notified by the

City's attorney.  Again, Williams makes no argument and points to no evidence to refute Blanton's

assertions.  Under these circumstances, Williams's retaliation claims fail under the third *prima*

*facie* element—causal connection between the protected activity (the filing of the EEOC charge)

and the adverse action (Williams's termination).  Indeed, under the causation prong, "a plaintiff

must show that the decisionmaker who committed the adverse employment action was aware of

the plaintiff's protected activity."  *Perches v. Elcom, Inc.*, 500 F. Supp. 2d 684, 692 (W.D. Tex.

2007) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003), *cert. denied*,

540 U.S. 1107 (2004)); *see Gollas v. Univ. of Tex. Health Sci. Ctr.*, 425 F. App'x 318, 325 (5th

Cir. 2011); *Ackel*, 339 F.3d at 385-86; *Medina*, 238 F.3d at 684; *Smith v. Potter*, 629 F. Supp.

2d 644, 656 (S.D. Miss. 2009). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999); *accord Gollas*, 425 F. App'x at 325; *Ackel*, 339 F.3d at 385-86; *Manning*, 332 F.3d at 883.

To the extent Williams asserts a § 1983 First Amendment retaliation claim, it is not actionable here for the same reason—the undisputed evidence demonstrates that the decision to indefinitely suspend/terminate Williams was made before he filed a complaint of discrimination with the EEOC. *See Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 346 (5th Cir. 2008) (recognizing that to sustain a First Amendment retaliation claim, a plaintiff must show that his speech motivated the adverse employment action); *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (stating that protected speech must precipitate the adverse employment action).

D.      Procedural Due Process[10]

Williams also asserts procedural due process claims against Defendants Blanton, Blitch, Odom, and the City. He maintains that he was deprived of his employment[11] without due process of law because his indefinite suspension order allegedly contained four unidentified charges of

_____

[10] To the extent Williams seeks to recover for due process violations pursuant to the Fifth Amendment, such claims are barred. "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Wakat v. Montgomery Cnty.*, 471 F. Supp. 2d 759, 766 (S.D. Tex.), *aff'd*, 246 F. App'x 265 (5th Cir. 2007). Williams makes no argument that Defendants were acting under the authority of the federal government, and the record contains no hint of federal involvement. Accordingly, Williams may not recover, as a matter of law, on any Fifth Amendment due process claims.

[11] Williams asserts a property interest (but not a liberty interest) in his job.

which Williams allegedly had no knowledge prior to the DRB hearing.[12]  He also complains that

he was denied a fair DRB hearing, reasoning that (1) Blitch and Odom, as board members, could

not be impartial in light of the EEOC charge Williams purportedly filed against them in February

2009, and (2) according to Williams, his DRB panel did not include a minority member, which

he contends is a violation of departmental policy.

The Due Process Clause of the Fourteenth Amendment provides:  "No State shall make

or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any State deprive any person of life, liberty, or property, without due process of

law."  U.S. CONST. amend. XIV, § 1.  Procedural due process claims require a two-part analysis:

(1) whether the plaintiff has a life, liberty, or property interest that is entitled to procedural due

process protection; and (2) if so, what process is due.  *See Logan v. Zimmerman Brush Co.*, 455

U.S. 422, 428 (1982); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972); *Baldwin v. Daniels*,

250 F.3d 943, 946 (5th Cir. 2001); *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th

Cir. 1984) (pointing out that a court reviewing a procedural due process claim must determine if

the plaintiff was "deprived of a protected property interest" and, if so, whether the deprivation

was accomplished "without adherence to due process minimums"); *Givs v. City of Eunice*, 512

---

[12] Williams's complaint states:

In October of 2009 Plaintiff received an indefinite suspension letter that contained [four]
charges that Plaintiff had no knowledge of nor had they been properly investigated
according to Sgt. Ken Carona.  Department policy states that employees shall receive
notice of all investigations pending against them, and shall have the right to a disciplinary
review board.  Plaintiff did not receive notice of these charges before the Disciplinary
Review Board hearing.  White Officers in the past always received notice of charges
against them and were afforded the opportunity to respond to those charges.  Plaintiff
never received due process regarding those additional charges and was terminated in
violation of Police Department policy.

F. Supp. 2d 522, 545 (W.D. La. 2007), *aff'd*, 268 F. App'x 305 (2008). "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993) ("before dismissing [a public] employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond"); *Price v. Brittain*, 874 F.2d 252, 261 (5th Cir. 1989) (same) (citing *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980)). Procedural due process does not require that plaintiffs be afforded all the procedural safeguards found in a "trial-type" hearing, and plaintiffs must allege specific insufficiencies in the process afforded them to prevail on a denial of due process claim. *See Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975); *accord Rodriguez v. Ysleta Indep. Sch. Dist.*, No. EP-05-CV-0112, 2006 WL 1544604, at *5 (W.D. Tex. May 30, 2006), *aff'd*, 217 F. App'x 294 (5th Cir. 2007).

As with Williams's other causes of action, his procedural due process claims fail for lack of evidence. As set forth above, Williams asserts that his indefinite suspension order contained four charges of which he had no prior knowledge. First, Williams does not identify these "four charges," and, in any event, the record belies this contention. As set forth above, Williams was terminated for several rule violations stemming from the Memorial High School Incident, his false accusation against Walker (regarding inappropriate behavior with minors), the Traffic Incident with Trooper Martinez, and Williams's false statement about his military service. Prior to his

termination, Williams participated (with his attorney) in the DRB hearing on August 3, 2009.[13]

Williams was also sent written notification on August 7, 2009, placing him on administrative leave pending an independent investigation of the Traffic Incident. In addition, Williams submitted written correspondence regarding the investigations of the Memorial High School Incident, Officer Walker's alleged activity with minors, and the Traffic Incident. Importantly, before issuing the indefinite suspension order, Chief Blanton met with Williams to discuss each charge and the proposed punishment of indefinite suspension/termination, providing Williams an opportunity to respond. According to Chief Blanton, he discussed these charges with Williams "on at least two occasions" and offered Williams the option of resigning. Further, pursuant to the labor agreement between the City and the Port Arthur Police Association, Williams's indefinite suspension was not final the day it was issued. Williams was allowed to, and did, appeal to the City Manager and to binding, final arbitration. It was not until April 12, 2010, after a full arbitration proceeding (on February 3 and 4, 2010) in which Williams was represented by counsel, that the arbitrator upheld Williams's indefinite suspension. *See Browning*, 990 F.2d at 844 (finding short informal meeting with superior officer sufficient to satisfy due process where plaintiff was given notice of his possible termination, the reasons therefor, an opportunity to respond, and plaintiff could avail himself of elaborate post-termination procedural safeguards). Because Williams has presented no

---

[13] Williams also claims that the August 3, 2009, DRB hearing panel was unfair because it did not conform to departmental policy, purportedly requiring a minority member. Williams, however, has not identified or produced the relevant policy and has not contradicted Chief Blanton's testimony that Officer Primm, a female, qualifies as a minority for purposes of DRB membership. According to departmental practice, Chief Blanton and the president of the local law enforcement union collaborate months in advance and jointly select officers to serve on DRB panels for a three-month term. Regardless, in light of the fact that no record evidence suggests that Williams engaged in any protected activity prior to the board's assembly or the hearing on August 3, 2009, there is no basis on which to conclude that the DRB panel was biased against Williams.

contrary evidence raising a fact issue, the court finds that he received constitutionally adequate notice and an opportunity to be heard. As a consequence, Defendants are entitled to summary judgment as to Williams's due process claims.

### E. State Law Claims

#### 1. TWA

Next, Defendants seek summary judgment on Williams's TWA claims brought against Defendants Blanton, Blitch, Odom, and the City[14]—which are based upon Williams's reporting Walker's allegedly inappropriate behavior with underage girls. Section 554.002 of the TWA prohibits retaliation against an employee for reporting a perceived violation of the law. *See* TEX. GOV'T CODE ANN. § 554.002; *accord Moreno v. Tex. A&M Univ.–Kingsville*, 339 S.W.3d 902, 907 (Tex. App.—Corpus Christi, 2011, pet. filed). "To establish a whistleblower claim, an employee must demonstrate that (a) the employee reported an alleged violation of law to an appropriate law enforcement authority; (b) the employee made the report in good faith; (c) the employer took an adverse employment action against the employee because the employee made the report; and (d) the employer's action proximately caused the employee's injuries." *Forsyth v. City of Dallas*, 91 F.3d 769, 775 (5th Cir. 1996), *cert. denied*, 522 U.S. 816 (1997); *Jackson v. Singh*, No. H-06-2920, 2008 WL 2690357, at *16 (S.D. Tex. July 8, 2008); *Moreno*, 339 S.W.3d at 907. "A public employee whose employment is suspended or terminated or who is

---

[14] "The [TWA] 'does not create a cause of action against employees of a public agency. Instead, the statute creates a cause of action against state[,] local or governmental agencies.'" *Hoskins v. Kaufman Indep. Sch. Dist.*, No. 3:03CV130, 2003 WL 21517830, at *4 (N.D. Tex. 2003) (quoting *Rodriguez v. Laredo Indep. Sch. Dist.*, 82 F. Supp. 2d 679, 688 (S.D. Tex. 2000)); *see also Crabtree v. Ibarra*, No. H-10-1118, 2011 WL 649997, at *7 (S.D. Tex. Feb. 10, 2011); *Nairn v. Killeen Indep. Sch. Dist.*, No. 08-10-00303-CV, 2012 WL 561015, at *11 (Tex. App.—El Paso Feb. 22, 2012, no pet.); *Moore v. City of Wylie*, 319 S.W.3d 778, 783-84 (Tex. App.—El Paso 2010, no pet.). Consequently, Williams's TWA claims are dismissed against the individual Defendants Blanton, Blitch, and Odom.

subjected to an adverse personnel action in violation of [the Act]" is entitled to sue for injunctive relief, actual damages, court costs, and reasonable attorneys' fees. TEX. GOV'T CODE ANN. § 554.003(a); *accord Bates v. Randall Cnty.*, 297 S.W.3d 828, 834-35 (Tex. App.—Amarillo 2009, no pet.); *City of Houston v. Levingston*, 221 S.W.3d 204, 231 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The purpose of the Whistleblower Act is twofold: (1) to "protect public employees from retaliation by their employer when, in good faith, they report a violation of law, and (2) to secure lawful conduct by those who direct and conduct the affairs of government." *Bates*, 297 S.W.3d at 837 (citing *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.)). "Because the Act is remedial in nature, it should be liberally construed to effect its purpose." *Id.*

For purposes of the TWA, the Texas Supreme Court has held that "'good faith' means that (1) the employee subjectively believed that the conduct reported was a violation of law, and (2) the employee's belief was reasonable in light of the employee's training and experience." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002) (citing *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). "The test's first element—the 'honesty in fact' element—ensures that an employee seeking a Whistleblower Act remedy believes he was reporting an actual violation of law." *Needham*, 82 S.W.3d at 320 (citing *Hart*, 917 S.W.2d at 784-85). "The test's second element ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee under similar circumstances would have believed the facts, as reported, were a violation of law." *Needham*, 82 S.W. 3d at 320 (citing *Hart*, 917 S.W.2d at

785).  Here, Williams's admission that he falsely accused Officer Walker of criminal conduct with minor girls at Memorial High School dooms his TWA claim.  Because this undisputed fact illustrates Williams's lack of good faith, Defendants are entitled to summary judgment on Williams's whistleblower claim.

### 2.    Tort Claims

Williams next asserts claims for assault and battery, slander, and tortious interference with a prospective business relationship against Walker and intentional infliction of emotional distress against Walker and Carona.  Defendants seek the dismissal of these claims pursuant to Texas Civil Practice and Remedies Code § 101.106(a) and (e).  Pursuant to § 101.106 of the TTCA, a plaintiff must "decide at the outset [of a lawsuit] whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008).  The purpose behind this election of remedies provision, the Texas Supreme Court has reasoned, is to "reduc[e] the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery."  *Id*.  Section 101.106 of the TTCA provides in relevant part:

> (a)    The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> * * *
>
> (e)    If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.106; *accord Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 656-57. Thus, "when TTCA claimants elect to include the governmental unit as a party to a suit, whether alone or in conjunction with a governmental employee, TTCA claimants have made an irrevocable election of remedies that they will look solely to the governmental unit for compensation for [the] injury." *Villasan v. O'Rourke*, 166 S.W.3d 752, 759 (Tex. App.—Beaumont 2005, pet. denied); *accord Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 657-59; *Kamel v. Univ. of Tex. Health Sci. Ctr.*, 333 S.W.3d 676, 688 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). "'[A]ll [common-law] tort theories alleged against a governmental unit . . . are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.'" *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011) (quoting *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659); *accord Bustos v. Martini Club Inc.*, 599 F.3d 458, 463-64 (5th Cir. 2010).

In the case at bar, Williams filed his Original Complaint on December 29, 2010, asserting claims for intentional infliction of emotional distress, slander, and tortious interference with prospective business relationship against the City as well as one or more of the individual defendants named in the Amended Complaint. These causes of action are identical to those asserted in Williams's Amended Complaint and are based upon the same subject matter. Therefore, despite Williams's decision to drop such claims against the City in his Amended Complaint, upon filing his initial Complaint, he made an irrevocable election under § 101.106(a) and forever relinquished his right to recover "against any individual employee of the governmental unit regarding the same subject matter." *See* TEX. CIV. PRAC. & REM. CODE § 101.106; *see also Alcala v. Tex. Webb Cnty.*, 620 F. Supp. 2d 795, 807-08 (S.D. Tex. 2009) (holding in the context of a motion to amend the complaint, that once the plaintiff makes an election under § 101.106, the

decision cannot be rescinded by a subsequent amendment) (citing *Flores v. Sanchez*, No. EP-04-CA-056-PRM, 2005 WL 1404163, at *3 n.6 (W.D. Tex. June 14, 2005) (stating that plaintiffs must abide by their initial decision and its consequences under § 101.106)).

Regarding the assault and battery claim against Walker, Defendants argue that Williams previously asserted (in his Original Complaint) this same cause of action against the City through his allegation of *respondeat superior* and ratification. The court disagrees. The Original Complaint states in relevant part:

### RESPONDEAT SUPERIOR AND RATIFICATION

25. Whenever in this complaint it is alleged that the Defendant, City of Port Arthur, Texas, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act/or that at that time such act was done with the full authorization or ratification of the Defendant or was done in the normal course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

### ASSAULT AND BATTERY BY OFFICER CALVIN WALKER

26. Defendant Officer Calvin Walker intentionally, knowingly, or recklessly made contact with Plaintiff's person or threatened Plaintiff with imminent bodily injury which caused injury to Plaintiff. Defendant, Calvin Walker grabbed Plaintiff several times while at the same time calling Plaintiff a young punk. Defendant, Calvin Walker caused Plaintiff to suffer pain and embarrassment. Plaintiff suffered damages for which Plaintiff herein sues.

The express language of Williams's Original Complaint limits the assault and battery claim to Officer Walker and does not appear also to assert this cause of action against the City via Paragraph 25. As a result, this claim is not barred against Officer Walker. *See Green v. Nueces Cnty.*, No. C-09-316, 2010 WL 918972, at *5 (S.D. Tex. Mar. 15, 2010) (citing *Kelemen v. Elliot*, 260 S.W.3d 518, 523 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (stating that § 101.106(e) only applies where a plaintiff files claims against the government and individuals);

*Bohmfalk v. City of San Antonio*, No. SA-09-CV-0497, 2009 WL 4263352, at *3-4 (W.D. Tex. Nov. 3, 2009). Nevertheless, as Williams's sole remaining state law claim, the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367 (stating that a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").[15]

---

[15] To the extent any other state law claims survive, the court declines to exercise supplemental jurisdiction over them. Where, as here, all federal claims are eliminated from a case prior to trial, the general rule is for the federal court to decline to exercise jurisdiction over pendent state law claims. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 425 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004); *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002); *Jones v. Adam's Mark Hotel*, 840 F. Supp. 66, 69 (S.D. Tex. 1993). The rule, however, is "neither mandatory nor absolute." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000). In determining whether to retain jurisdiction over the state law claims, the court takes into account the provisions of 28 U.S.C. § 1367(c) and considers the factors of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 373 F. App'x 438, 442 n.10 (5th Cir. 2010); *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. Civ. A. 3:02-CV-2727-G, 2004 WL 833595, at *19 n.17 (N.D. Tex. 2004). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Montegut v. Williams Commc'ns, Inc.*, 109 F. Supp. 2d 496, 499-500 (E.D. La. 2000) (quoting *Guzzino v. Felterman*, 191 F.3d 588, 594 (5th Cir. 1999)); *accord Cudd Pressure Control Inc. v. Roles*, 328 F. App'x 961, 966 n.2 (5th Cir. 2009). Here, all federal causes of action have been dismissed, and neither the parties nor the court appear to have engaged in any preparation for trial, which is set more than five months in the future. In the absence of any valid federal claims and any justification stemming from judicial economy concerns or issues of convenience or fairness to the litigants (which might be present if this litigation were more advanced), the court "should not needlessly make decisions concerning state law." *Montegut*, 109 F. Supp. 2d at 500.

III.    Conclusion

In accordance with the foregoing analysis, Defendants' Motion for Summary Judgment is

GRANTED.  Williams fails to present a claim that warrants relief.  There remain no material facts

in dispute, and Defendants are entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 1st day of June, 2012.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE